UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAHIL RANA,

                    Petitioner,

        v.

PAM BONDI et al.,

                    Respondents.

CASE NO. 2:26-cv-00268-DGE

ORDER GRANTING PETITION
FOR HABEAS (DKT. NO. 1)

Before the Court is Petitioner's petition for writ of habeas corpus.  (Dkt. No. 1.)  For the reasons discussed herein, the petition is GRANTED.

## I.        BACKGROUND

Petitioner is a citizen of India.  (Dkt. Nos. 1 at 2; 9-1 at 2.)  Petitioner entered the United States on July 10, 2024.  (Dkt. Nos. 1 at 5; 9-1 at 2.)  On July 11, 2024, DHS placed Petitioner "[i]n removal proceedings under section 240 of the Immigration and Nationality Act" alleging he was subject to removal pursuant to "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended."  (Dkt. No. 9-1 at 2.)  Petitioner was issued a Notice to Appear directing him to appear

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 1

before an immigration judge on September 4, 2025 in New York, New York. (*Id.*) Also on July 11, 2024, Petitioner was released on an Order of Release on Recognizance ("OREC") pursuant to "section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." (Dkt. No. 9-3 at 2.) The OREC prohibited Petitioner from changing his "place of residence without first securing written permission." (Dkt. No. 9-3 at 2.)

Petitioner conceded his removability on September 8, 2025 and India was designated as the country of removal. (Dkt. No. 8 at 2.) Petitioner then filed an asylum application on October 28, 2024 and identified his address as being in New York. (*Id.*)

On November 8, 2025, Immigration and Customs Enforcement ("ICE") encountered Petitioner in Portland, Oregon. (Dkt. No. 9-2 at 3.) Respondents do not identify the circumstances under which ICE contacted Petitioner other than to state ICE was "conduct[ing] a knock and talk at a residence in Portland, Oregon" and that Petitioner was "encountered at or near the residence." (Dkt. No. 8 at 2.) Petitioner asserts ICE contacted him "while conducting an operation targeting someone else." (Dkt. No. 10 at 2.) After the encounter, ICE identified Petitioner was present without having been admitted into the United States and arrested him. (Dkt. No. 9-2 at 3.) A deportation officer then concluded Petitioner had "violated the terms of his OREC paperwork since he failed to report a change of address to ICE or the immigration court within 30 days of moving." (*Id.* at 4.) Yet, it appears the same deportation officer identified that Petitioner's address remained in "Ozone Park, New York." (*Id.* at 2.)

Respondents do not identify the address they believe Petitioner was residing at—other than the Ozone Park, New York address—at the time Petitioner was re-detained. Petitioner asserts he continued to live in New York and that at the time of his arrest, "I was just visiting a friend in Portland, Oregon." (Dkt. No. 10 at 6.)

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 2

Petitioner has been detained at Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington since November 8, 2025.  (Dkt. No. 8 at 2.)

Petitioner filed the present petition on January 22, 2026.  (Dkt. No. 1.)  Petitioner asserts Defendants have "violate[d] the Immigration and Nationality Act" by detaining him under "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2)" instead of 8 U.S.C. § 1226(a).  (Dkt. No. 1 at 17.)  Petitioner also argues "the application of § 1225(b)(2) to me is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA."  (*Id*. at 17–18) (citing 5 U.S.C. § 706(2)).  Finally, Petitioner asserts his detention violates the Due Process Clause of the Fifth Amendment.  (*Id*. at 18.)

Respondents filed a response on February 6, 2026.  (Dkt. No. 7.)  Respondents, even after acknowledging "courts in this District have reached the opposite conclusion," assert Petitioner is detained pursuant to 8 U.S.C. § 1225(b).  (Dkt. No. 7 at 5–6.)  Respondents further argue while "[r]evocation was discretionary under 8 C.F.R. § 236.1(c)(9) and does not require evidence of a specific OREC violation," here "Petitioner failed to update his address with ERO or EOIR."  (*Id*. at 3.)  Finally, Respondents argue habeas petitions are the wrong vehicle for APA claims.  (*Id*. at 7.)

Petitioner filed his reply on February 10, 2026.  (Dkt. No. 10.)  He elaborates that his re-detention without a hearing and "based on a discretionary revocation" of his OREC violated due process.  (*Id*. at 2.)  He further argues that "revocation of [his] OREC does not retroactively alter the statutory authority for [his] detention" from § 1226(a) to § 1225(b).  (*Id*. at 4.)

## II.    ANALYSIS

### A.  Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on her habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

**B. Petitioner is not detained under 8 U.S.C. § 1225.**

At the outset, Respondents argue Petitioner is subject to mandatory detention during removal proceedings pursuant to 8 U.S.C. § 1225(b). (Dkt. No. 7 at 5.) § 1225 applies to "applicants for admission" to the United States, who are defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories, both of which are subject to mandatory detention.[1] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)). In contrast, 8 U.S.C.

---

[1] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 4

§ 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention.  *Jennings*, 583 U.S. at 303. § 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings.  *Id.*

Here, the Court finds Respondents' argument that Petitioner is detained pursuant to § 1225 inconsistent with the factual record.  First, the clear text of Petitioner's OREC states he is being released "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations."  (Dkt. No. 9-3 at 2.)  It further identifies Petitioner was released on his own recognizance.  (*Id*.)  An order of recognizance is issued when a detainee is released pursuant to § 1226.  *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).").

Second, Petitioner's Notice to Appear does not designate Petitioner as "an arriving alien" (*see* Dkt. No. 9-1 at 2), which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation.  *See* 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez*, 792 F. Supp. 3d at 218 (concluding "arriving alien" language synonymous with § 1225).

Third, individuals subject to § 1225 can only be released for "urgent humanitarian reasons or significant public benefit."  *Jennings*, 583 U.S. at 300; 8 U.S.C. § 1182(d)(5)(A). Petitioner was released on his own recognizance with no finding his release was based on "urgent humanitarian reasons" or for "significant public benefit."  And parole based on

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 5

humanitarian reasons or public benefit is terminated only after the Secretary of Homeland Security has determined the purposes of such parole have been served. *See* 8 U.S.C. § 1182(d)(5)(A). Nothing in the record identifies such a determination was made at the time Petitioner was re-detained, which further weighs against finding § 1225 was the basis for his release and subsequent re-detention.

Fourth, DHS issued a warrant for Petitioner's arrest pursuant to § 236 of the INA, or § 1226. (Dkt. No. 9-5 at 2.)

Fifth, the Enforcement Removal Officer who provided information about Petitioner's history makes no mention that Petition was taken into custody or that he remains in custody based on § 1225. (*See* Dkt. No. 8.) Instead, the Enforcement Removal Officer identifies Petitioner was "arrested for immigration violations"; namely, "fail[ing] to update his address with ERO or EOIR." (*Id*. at 2.)

While presumably Respondents could have detained Petitioner pursuant § 1225(b) when first encountered in July 2024, Respondents consistently applied § 1226 to Petitioner since his arrival to the United States. Sections 1225 and 1226 cannot be applied simultaneously, and the "procedural protections thereunder . . . cannot be unilaterally abrogated without process by the Government simply 'switching tracks.'" *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (citation omitted).

Accordingly, the Court finds Petitioner is not subject to, nor currently being detained pursuant to, 8 U.S.C. § 1225.

**C. Petitioner's re-detention violated due process.**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall

be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). An individual who was initially released from immigration custody is deprived of this liberty interest upon a renewed detention. *See Dejesus v. Bostock*,

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 7

No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025) ("That the Government allowed [petitioner] to remain in the community for more than three years after releasing him only strengthened this interest"); *Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been undeniably deprived of [his liberty interest] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).  Here, Petitioner was arrested on July 11, 2024 and released that same day (*See* Dkt. Nos. 9-1 at 2; 9-3 at 2.).  At that point, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025); *Makuey*, 2025 WL 3640900, at *4.

Accordingly, the first *Mathews* factor favors Petitioner.

2. Risk of erroneous deprivation of interest through procedures used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.  This factor weight heavily in Petitioner's favor.

To justify Petitioner's current detention, counsel for Respondents asserts Petitioner is subject to § 1225 without any support.  Such position shows a clear erroneous basis for Petitioner's detention.

Respondents also argue Petitioner's detention was justified because release can be revoked at any time under 8 C.F.R. § 236.1(c)(9).  But courts in this district have previously held that the government violates due process when an individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing.

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 8

*See Bello Chacon v. Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025).

Finally, Respondents assert Petitioner's failure to update his address constituted a violation of his OREC.  (Dkt. No. 7 at 3, 5.)  But this conclusion is dubious where the deportation officer identified Petitioner maintained a New York address at the time of his detention (Dkt. No. 9-2 at 2) and never identified the basis for concluding that Petitioner had relocated from New York to Oregon (*id*. at 3–4).  Moreover, this Court has previously determined that merely asserting an OREC violation does not outweigh the risk of erroneous deprivation when an individual is re-detained without a pre-deprivation hearing.  *See Singh v. Noem*, No. 2:26-cv-00079-DGE, 2026 WL 265670, at *5 (W.D. Wash. Feb. 2, 2026) (finding in addition to ambiguity about whether the order of release had been violated, "Respondents also do not explain why providing only an 'informal interview' for an individual alleged to have violated an order of release is sufficient process."); *see also Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2026 WL 251798, at *2, 5 (W.D. Wash. Jan. 30, 2026) (finding Petitioner faced a high risk of erroneous deprivation where Respondents detained him for alleged failures to report address changes and he was not provided opportunity to be heard); *Zavorin v. Wamsley*, No. 2:26-cv-00173-DGE, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026) (finding Petitioner faced a high risk of erroneous deprivation when he was detained subject to an administrative warrant but not provided pre-deprivation notice).

The risk that Petitioner was erroneously detained is extremely high.  Again, Respondents do not identify when Petitioner moved from New York, the address where Petitioner allegedly

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 9

was residing at, or how it was concluded Petitioner had moved. Respondents only make conclusory statements that Petitioner violated his OREC and was therefore re-detained without a pre-deprivation hearing. In contrast, Petitioner asserts he "never gave up my residence in New York. I was just visiting a friend in Portland, Oregon." (Dkt. No. 10 at 6.) Petitioner was provided no opportunity to be heard before he was detained.

Accordingly, the second *Mathews* factor favors Petitioner.

3.  Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient. Moreover, while certainly "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude Petitioner's circumstances presented such an urgent scenario. Again, all that is provided are conclusory statements that Petitioner violated the terms of his release and that he can now be

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 10

detained with no hearing.  These conclusory statements are insufficient to find the government's potential interest in detaining Petitioner without process outweighs Petitioner's liberty interest.

In sum, all three *Mathews* factors favor Petitioner.  Respondents' detention of Petitioner violates the due process protections afforded to him by the Constitution.  Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).[2] [3]

### III.   ORDER

The petition for writ of habeas corpus (Dkt. No. 1) is GRANTED.  Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within ONE day of this order and return him to the conditions of release identified his July 11, 2024 OREC.

Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.  To be clear, the record presented in this matter did not establish urgent circumstances nor a clear legal basis justifying re-detention without notice and a hearing.

Within **TWENTY-FOUR (24)** hours of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

---

[2] Having concluded Petitioner's re-detention violated the Due Process Clause, the Court will not consider his APA claim.

[3] The Court also declines to rule on Petitioner's argument that at a hearing "the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or flight risk."  (Dkt. No. 1 at 9.)  Because release is being granted, it is not necessary to reach this argument.  Moreover, Petitioner's reliance on *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), is misplaced.  As later explained by the Ninth Circuit, "We are aware of no Supreme Court case placing the burden on the government to justify the continued detention of an alien, must less through an elevated 'clear and convincing' showing." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211 (9th Cir. 2022).

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 11

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 17th day of February, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITION FOR HABEAS (DKT. NO. 1) - 12